MID-SOUTH ENGINEERING COMPANY, INC.,
Defendant-Plaintiff in Error, v. ALBERTA K.
BUCHANAN, Executrix of the Estate of DAVID T.
BUCHANAN, Deceased Plaintiff-Defendant in Error.
—440 S.W.2d. 600

Western Section. July 5, 1967.

Certiorari Denied October 2, 1967.

Clyde W. Key, Knoxville, for plaintiff in error.

W. E. Badgett, Knoxville, for defendant in error.

CARNEY, J. The plaintiff below, Mrs. Alberta K. Buchanan, executrix of the estate of her deceased husband, David T. Buchanan, recovered a judgment in the court below, after a jury verdict, in the amount of $19,200 which was reduced by remittitur of $4,800 to the sum of $14,400 with interest from July 1, 1963. Mid-South Engineering Company has appealed in error from the final judgment. The executrix, Mrs. Buchanan, has appealed in error from the action of the court in suggesting the remittitur.

The deceased, David T. Buchanan, had been employed as an auditor or accountant for the defendant, Mid-South Engineering Company, beginning in May, 1958, at $800 per month. He died July 1, 1963. Plaintiff contended that defendant corporation was indebted to the estate of Mr. Buchanan for his salary of $800 per month for the 24 months from July, 1961, to the date of his death in July, 1963, making a total claim of $19,200.

Mr. Bowman, president of Mid-South, contended that in June, 1962, he made a new agreement with Mr. Buchanan to pay him $800 from and after that time only if he worked at the offices of Mid-South at least one week each month and that Mr. Buchanan, because of sickness, had worked less than 72 hours since June, 1962, for which he had been paid $800 in November, 1962, and that Mid-South owed Mr. Buchanan nothing. The jury gave judgment for 24 months pay of $19,200.

Mr. Buchanan had been a long-time friend of Mr. Bowman and had helped Mr. Bowman organize the engineering company sometime about 1957. He became a director in the corporation and remained a director until January 4, 1962, when he sold his stock in the corporation and

ceased to have any official position thereafter. Mr. Buchanan was not a certified public accountant.

On May 20, 1958, Mid-South Engineering Company wrote the following letter to Mr. Buchanan:

"MID-SOUTH ENGINEERING COMPANY
Inc.

820 Broadway, N. E.
Knoxville, Tennessee
May 20, 1958

Mr. D. T. Buchanan
Burwell Building
Knoxville, Tennessee

This is to advise that you are hereby appointed as official accountant and auditor for the Mid-South Engineering Company Inc. and to perform professional services as required.

For performing these services the Mid-South Engineering Company, Inc. hereby agrees to pay you an annual fee of ninety-six hundred dollars ($9600.00) based on monthly payments of eight hundred dollars ($800.00) per month.

Also, since your services require some travelling Mid-South Engineering Company Inc. further agrees to furnish you with an automobile.

MID-SOUTH ENGINEERING COMPANY INC.
/s/ J. D. Bowman
—————————————————
J. D. Bowman, President"

Mr. Buchanan was paid $800 per month for his services under the terms of the above letter for the period

through February, 1961, which payments were paid regularly. There is no controversy that he had been fully compensated for such period of time.

It was the contention of the defendant that sometime during the year 1961, Mr. Buchanan became ill and unable to perform his duties satisfactorily as auditor and accountant for the Mid-South Engineering Company; that subsequent thereto he was involved in an automobile collision which made it even more difficult for him to perform his duties as auditor and accountant; that it became necessary for the Mid-South Engineering Company to employ the services of another accountant to do his work; that on June 21, 1962, Mr. Bowman, as president of Mid-South Engineering Company, had an agreement with Mr. Buchanan to pay, and did pay, him $2,400 for services rendered up to and including June 21, 1962; that they made a further verbal agreement that from and after that date Mr. Buchanan would be paid the sum of $800 per month for his services provided he spent as much as one week per month in the offices of Mid-South Engineering Company performing his duties as auditor-accountant; that in November, 1962, Mr. Buchanan was paid $800 which was the full amount due and owing to him and that Mid-South Engineering Company owed him nothing further. Mr. Buchanan was allowed to keep the company automobile which was returned by his widow after his death.

Mid-South's assignment of error No. I insists that the Trial Court erred in failing to direct a verdict in its favor at the close of all the proof and hence that there is no evidence to support the verdict of the jury.

The executrix testified that when she surrendered the automobile to Mid-South, she made demand upon Mr.

Bowman for the balance due and owing to her husband. She reminded Mr. Bowman that her husband had helped him organize the corporation and get it started. She asked for payment of $800 per month for 24 months or a total of $19,200. Mr. Bowman stated that he would have to discuss it with his attorney.

Mrs. Buchanan further testified that she took possession of the records and accounts and papers of her husband soon after his death and that she knew of her own knowledge that her husband did auditing for concerns other than the defendant corporation and had many clients other than Mid-South Engineering Company. She introduced as exhibit 3 (copied above) the letter notifying Mr. Buchanan of his appointment as auditor and accountant for the Mid-South Engineering Company and stated that she found no documents among her husband's papers indicating that the contract of employment had ever been changed.

The other documents introduced by Mrs. Buchanan tending to show the liability of Mid-South Engineering Company were exhibits 4, 5, and 6. Exhibit 4 is a small memorandum book 4 inches long with pages 2 inches wide in which are listed in pencil what appear to be charges by Mr. Buchanan against some of his clients including the Mid-South Engineering Company. The memorandum book also contains what appear to be some credits. The entries relating to the Mid-South Engineering Company are in three columns, the one on the left being the month and year, the middle column shows the amount of monthly charge, and the column on the right shows the dates of payments of said charges and we copy the same in full as follows:

| 1958 | "Mid South | 1958 |
|---|---|---|
| May | | May 16 |
| June | 800.00 | June 9 |
| July | 800.00 | June 27 |
| Aug | 800.00 | Aug. 8 |
| Sept | 800.00 | Sept 9 |
| Oct | 800.00 | Oct 9 |
| Nov | 800.00 | Nov. 6 |
| Dec | 800.00 | Dec 8 |
| 1959 | 800.00 | 1959 |
| Jan | 800.00 | Jan 9 |
| Feb | 800.00 | Feb 9 |
| Mar | 800.00 | Mar 10 |
| Apr | 800.00 | Apr 10 |
| May | 800.00 | May 7 |
| June | 800.00 | June 10 |
| July | 800.00 | July 10 |
| Aug | 800.00 | Aug 10 |
| Sept | 800.00 | Sept 10 |
| Oct | 800.00 | Oct 10 |
| Nov | 800.00 | Nov 10 |
| Dec | 800.00 | Dec 10 |
| 1960 | | |
| Jan | 800.00 | Jan 8 |
| Feb | 800.00 | Feb 10 |
| Mar | 800.00 | Mar 21 |
| Apr | 800.00 | Apr 26 |
| May | 800.00 | June 6 |
| June | 800.00 | July 18 |
| July | 800.00 | July 18 |
| Aug | 800.00 | Sept 2 |
| Sept | 800.00 | Sept 28 |
| Oct | 800.00 | Nov 10 |
| Nov | 800.00 | Nov 29 |

| Dec | 800.00 | 61 | Feb 6 |
| 1961 | | | 1961 |
| Jan | 800.00 | | Mar 31 |
| Feb | 800.00 | | Mar 31 |
| | | | 1962 |
| Mar | 800.00 | | June 4 |
| Apr | 800.00 | | June 4 |
| May | 800.00 | | June 4 |
| June | 800.00 | | Nov 2 |
| July | | | |
| Aug | | | |
| Sept | | | |
| Oct | | | |
| Nov | | | |
| Dec | | | |
| 62 | | | |
| Jan | | | |
| Feb | | | |
| Mar | | | |
| Apr | | | |
| May" | | | |

Exhibit 5 and 6 are pocket diaries for the calndar years 1961 and 1962 which contain memoranda apparently showing the name of Mr. Buchanan's clients and the number of hours worked by Mr. Buchanan for these clients on various dates. Exhibit 5, the pocket diary for 1961, shows the following entries and hours worked for Mid-South Engineering Company:

| January | 0 hours | March 2 | 6 hours |
| February 27 | 6 hours | March 3 | 6 hours |
| February 28 | 6 hours | March 13 | 6 hours |
| March 1 | 5 hours | March 14 | 4 hours |

| | | | |
|---|---|---|---|
| March 15 | 6 hours | June 1 | 2 hours |
| March 20 | 6 hours | July | 0 hours |
| March 21 | 6 hours | August | 0 hours |
| March 22 | 6 hours | September | 0 hours |
| March 23 | 6 hours | October | 0 hours |
| March 24 | 6 hours | November | 0 hours |
| April 10 | 2 hours | December | 0 hours |
| May 31 | 3 hours | | |
| | | Total for 1961 | 82 hours |

Exhibit 6, the pocket diary for 1962, shows the following hours allegedly worked for Mid-South:

| | | | |
|---|---|---|---|
| January | 0 hours | November 2 | 1 hour |
| February | 0 hours | November 7 | 4 hours |
| March | 0 hours | November 9 | 3 hours |
| April | 0 hours | November 12 | 4 hours |
| May | 0 hours | November 14 | 3 hours |
| June | 0 hours | November 15 | 4 hours |
| July | 0 hours | November 19 | 4 hours |
| August | 0 hours | November 20 | 4 hours |
| September | 0 hours | November 21 | 4 hours |
| October 23 | 4 hours | November 28 | 4 hours |
| October 24 | 5 hours | November 29 | 3 hours |
| October 26 | 6 hours | December | 0 hours |
| November 1 | 4 hours | | |
| | | Total for 1962 | 57 hours |

Plaintiff's next witness, Mr. Bruce Moody, a certified public accountant and also an attorney at law engaged primarily in C.P.A. work, testified that he had been associated with Mr. Buchanan during his lifetime; that he knew that Mr. Buchanan had many clients other than Mid-South Engineering Company; and that his work for the defendant did not require all of his time and attention; that he knew that Mr. Buchanan did make some

audits and prepare some tax returns for the defendant corporation; and he further testified that after Mr. Buchanan had been ill and after he was involved in the automobile accident in which he was seriously injured Mr. Buchanan set up an office in his home and did some work there and that he was uptown some after the automobile accident. Mr. Moody had no specific knowledge of any particular work on any particular date by Mr. Buchanan for defendant Mid-South Engineering Company. This was all of the plaintiffs' proof.

Mid-South Engineering Company introduced Miss Helen Howard, a bookkeeper who became employed by the firm on February 1, 1962. She testified that the books of the defendant corporation are kept on a fiscal basis ending March 31 of each year and that the federal income tax returns cover the twelve months ending March 31; that the books of the company have to be closed as of that date and that it was necessary in order to close the books that the auditor make a distribution of the checks and cash receipts among the accounts for the various projects being carried on by the engineering company and post these distributions for each month as well as making the closing entries for the fiscal year; that the firm's business required the services of an auditor to prepare the federal income tax returns and state excise and franchise tax returns; that the income tax returns were prepared by the accounting firm of Nave, Clark & Chaffin, C.P.A.'s, for 1961 and subsequent years.

Miss Howard further testified that on June 21, 1962, she was called into the office of Mr. Bowman where he had been in conference with Mr. Buchanan; that Mr. Bowman, in the presence of Mr. Buchanan, explained to her that he had given Mr. Buchanan a check for $2,400

as payment to date for his services and that from and after that date he was to be paid $800 per month on condition that he work one week out of each month in the offices of Mid-South; and that Mr. Bowman told her to make a memorandum of the instructions which she introduced as exhibit 8 upon the trial. The first paragraph was read to the jury. We copy exhibit 8 in full as follows:

"6-21-62

Buck was in Mr. Bowman's office for a conference only. (He didn't do any work) Mr. Bowman agreed to pay him a month's salary each month provided he is here one week each month. Mr. B. gave him a check for $2400.00.

Mr. Bowman was in Clyde Key's office and gave him this information."

The second paragraph relating to Mr. Bowman's visit to attorney Key's office was not read to the jury. Further, Miss Howard testified that pursuant to the instructions of date June 21, 1962, she kept a record of the time Mr. Buchanan spent in work at Mid-South after June, 1962, and such hours were as follows:

| June, 1962 | 1 hour 15 minutes |
|---|---|
| July, 1962 | 4 hours 40 minutes |
| August, 1962 | 5 hours 45 minutes |
| Sept., 1962 | 25 minutes |
| Oct., 1962 | 14 hours 5 minutes |
| Nov., 1962 | 22 hours 15 minutes |
| Dec., 1962 | 11 hours 20 minutes |
| Total | 59 hours 45 minutes |

He was never in the office during the year 1963. Mr. Buchanan was paid $800 on November 2, 1962. Miss Howard did not hear any conversation between Mr. Bowman and Mr. Buchanan but only received her instructions from Mr. Bowman as to what to put down in the memorandum but it was in the presence of Mr. Buchanan. She also testified that Mr. Bowman told her to keep a record of the time Mr. Buchanan spent in the office but she never showed the record to Mr. Buchanan. When Mr. Bowman paid Mr. Buchanan $2,400 on June 21, 1962, Mr. Buchanan had not received a monthly check of $800 since March 31, 1961, when Mid-South paid him $1,600. All prior payments seem to have been paid monthly.

Mr. John Clark, C.P.A. and a member of the firm of Nave, Clark & Chaffin, testified that his firm was employed to file the federal income tax and state franchise and excise tax returns for the period ending March 31, 1962; normally the returns would have been due by June 15, 1962, but that extensions had been granted up to December 15, 1962; that the extensions had expired when he was requested to make them out; and that they were ultimately filed in March, 1963. Further, he testified that the bookkeeping is adequate at the Mid-South Engineering Company and that it is not necessary for him to show up at Mid-South Engineering Company every month but only two or three times a year and on special occasions when special questions are asked or items are brought up that require an answer at that time.

Miss Mary Kenner, a secretary for defendant corporation who was employed since June, 1957, testified that she was private secretary to Mr. Bowman, and that from June 21, 1962, she assisted Miss Howard in keeping a record of time spent by Mr. Buchanan in the office of

defendant corporation and she corroborated the hours testified to by Miss Howard. On cross-examination she testified that she was furnished an automobile by the corporation and that she wrote the letter of date May 20, 1958, filed as exhibit 3 and she had never seen or written any letter changing or doing away with exhibit 3.

Mr. Bowman, president of Mid-South Engineering, testified and admitted that Mr. Buchanan was employed as shown by the letter of May, 1958. Further, he testified that prior to the conference of June 21, 1962, he had had considerable difficulty in getting Mr. Buchanan to come to work; that Mr. Buchanan had been lax; that the tax returns had been late; that Mr. Buchanan had not closed the books for the fiscal year ending March 31, 1962, and had not furnished financial statements of audit reports for 1962 and that because Mr. Buchanan was a close friend and because he wanted to work out something with him, he called a conference on June 21, 1962, agreed to and did pay him the sum of $2,400 for services to date and further agreed to pay him $800 per month for every month he spent as much as a week working in Mid-South's office; that Mr. Buchanan asked Miss Howard what time of the month she would like him to come, whether before the tenth, etc., and she suggested that he should come after the tenth; that she would pay the bills and have everything ready for him when he came in after the tenth of each month.

Mr. Bowman testified that he and Mr. Buchanan figured that it would take him a week out of each month to do the necessary work at Mid-South and he agreed to pay him $800 for every month that he spent a week in the office; that Mr. Buchanan further agreed that he would come after the tenth of the month so the book-

keeper could do her billing and get her bills out and that Mr. Buchanan would come on the Monday after the tenth and do his week's work. The testimony of Mr. Bowman was not objected to under the dead man's statute or otherwise. This was all the proof of the defendant.

Mrs. Buchanan was recalled and she referred to exhibit 4 and stated that the book showed that Mr. Buchanan had credited the $2,400 received on June 21 to the charges for March, April and May, 1961; and that the $800 which was paid in November, 1962, was credited to the month of June, 1961; and that nothing had been paid for July, 1961 and subsequent months. This was all the testimony in the case.

The Trial Judge charged the jury that it was the theory of the plaintiff that the original contract for $800 per month with Mr. Buchanan continued up until the date of his death and that it was the theory of the Mid-South Engineering Company that the original contract was modified and the new contract agreement reached whereby Mr. Buchanan was to be paid $800 per month only on condition that he spend one week per month in the office of Mid-South doing their work and that he had been paid for the time he did spend in the office after the new agreement was reached. He further charged the jury that the burden of proof was upon the defendant to establish this contention. The jury found in favor of the plaintiff and awarded judgment for $19,200 representing $800 per month for 24 months beginning July, 1961, and ending June, 1963.

As we stated above, upon the motion for new trial, the Trial Judge suggested a remittitur of $4,800 reducing the judgment to $14,400 but he allowed interest from July 1, 1963, the date of Mr. Buchanan's death.

The writer thinks that the clear preponderance of the evidence is against the verdict of the jury and that Mid-South carried the burden of proof that there was a novation in June, 1962, when Mr. Buchanan was paid $2,400 for his work from March 1, 1961, to that date; and that the new agreement was that Mr. Buchanan would be paid $800 per month only in the event he spent one week or at least 40 hours a month in the offices of Mid-South Engineering Company in performance of his duties as auditor.

It is significant to note that in the memorandum book, exhibit 4, Mr. Buchanan made charges of $800 against Mid-South only through the month of June, 1961, and that no charges are made for the period from August, 1961, through May, 1962, though the months are written out in memorandum with no charges or credits opposite said months. We think this is peculiarly significant in view of the testimony of Mr. Bowman and Miss Howard concerning the alleged novation and new agreement in June, 1962. We also think it is significant that no further references are made in the memorandum concerning Mid-South after June, 1962, whereas in other portions of the memorandum there are charges and credits on dates through July 1, 1963. No explanation is offered as to the discrepancy in the memorandum showing the $2,400 as having been paid on June 4, 1962, whereas the check for $2,400 payable to Mr. Buchanan was dated June 20, 1962. There is also an entry of a $100 credit to the account of Supreme Food Company of date July 1, 1963. Mr. Buchanan died on July 1, 1963. Of course, he could have made the entry before he died on July 1, 1963.

The defendant's evidence corroborated by entries of Mr. Buchanan in his pocket diary for the year 1962 is that Mr. Buchanan rendered no service to Mid-South Engineering Company after the month of December, 1962.

■ Since there was a jury verdict approved by a trial judge this Court cannot decide the appeal in error on the preponderance of the evidence but is limited to the sole question of whether or not there is any material evidence sufficient to support the verdict of the jury. Williams v. Bridgeford, 1964, 53 Tenn.App. 381, 383 S.W.2d 770; Board of Mayor and Aldermen of Covington v. Monroe, 33 Tenn.App. 561, 232 S.W.2d 410.

There is no assignment of error directed to the charge of the Court. The alleged novation of date June 21, 1962, was not reduced to writing and Mr. Buchanan was allowed to keep the company automobile. There is no evidence in the record regarding the financial standing of Mr. Buchanan nor of Mid-South Engineering Company. The inference is that Mid-South is strong financially. The only evidence of Mr. Buchanan's financial status is that he borrowed $1,000 in 1957 to invest in Mid-South. However, it is unusual even for a wealthy man to let his salary go unpaid for as much as a year without some explanation for the delay in collection. There is no proof as to whether Mr. Buchanan ever made request for the collection of any salary between March 31, 1961, when he was paid $1,600 and June 21, 1962, when he was paid $2,400 nor is there any evidence of requests for payments or lack of requests for payments between June 21, 1962, and November 2, 1962, when he was paid $800.

■ The primary issue before the jury was the credibility of the testimony of Mr. Bowman and of Miss How-

ard that the payments on June 21, 1962, of $2,400 and November 2, 1962, of $800 were pursuant to the new agreement and not simply payments on account. We must assume that the jury, by its verdict, did not believe Mr. Bowman and Miss Howard. Even though we feel strongly that the evidence preponderates against the verdict of the jury and that Mr. Bowman and Miss Howard were fully corroborated in their testimony, yet we cannot say as a matter of law that all reasonable men must come to the same conclusion and that there is no material evidence upon which the jury could disbelieve the testimony of Mr. Bowman and Miss Howard. Accordingly, we must overrule assignment of error I of Mid-South Engineering Company.

Assignment of error No. II insists that the judgment is excessive even after the remittitur suggested by the Trial Judge. The plaintiff below, Mrs. Buchanan, executrix, assigns error to the action of the Trial Judge in suggesting the remittitur of $4,800, apparently holding that the estate was not entitled to recover wages for the six months January through June, 1963. We treat both of these assignments of error at the same time.

The uncontradicted testimony in the record is that in December, 1962, Mr. Buchanan was either unwilling or unable to perform the principal duties of his employment as auditor for the Mid-South Engineering Company and that it became necessary to retain the accounting firm of Nave, Clark & Chaffin to file federal income tax returns and state excise and franchise tax returns which were due in June, 1962.

The letter of date May 20, 1958, notifying Mr. Buchanan of his appointment as official accountant and auditor contemplates Mr. Buchanan rendering "pro-

fessional services as required.'' There is no evidence that Mr. Buchanan rendered any services to the corporation after December, 1962. Since he rendered no services at all during the year 1963, Mr. Buchanan's estate is not entitled to recover any compensation for that year and there was no evidence upon which the jury could reasonably allow a recovery to the estate for the months January, 1963, through June, 1963. His Honor the Trial Judge quite properly suggested a remittitur of $4,800 on penalty of the defendant being granted a new trial. Since we have held that there was some evidence from which the jury could reasonably have found the original agreement in full force through December, 1962, we do not feel that we can grant any further remittitur. Accordingly, assignment of error of the executrix, Mrs. Buchanan, to the action of the Trial Court in granting a remittitur of $4,800 and the assignment of error No. II of Mid-South that this Court should grant an additional remittitur are both overruled.

■ Assignment of error No. III of Mid-South is that His Honor the Trial Judge was in error in allowing interest on the judgment from July 1, 1963, the date of the death of Mr. Buchanan. The executrix contends that interest was allowable as a matter of right under T.C.A. Section 47-14-107. Said section is as follows:

"47-14-107. Bonds, notes, bills of exchange, and liquidated and settled accounts bearing interest.—All bonds, notes, bills of exchange, and liquidated and settled accounts, signed by the debtor, shall bear interest from the time they become due, unless it is expressed that interest is not to accrue until a specific time therein mentioned. (Code 1858, sec. 1945 (deriv. Acts

1835-1836, ch. 50, sec. 1); Shan., sec. 3494; Mod. Code 1932, sec. 7305; T.C.A. (orig. ed.), sec. 47-1607.)''

In our opinion a claim for wages or salary as brought in the instant case does not come within 47-14-107 quoted above.

However, the plaintiff's executrix also contends that interest was allowable in the discretion of the Trial Judge. Akers v. J. B. Sedberry, Inc., 39 Tenn.App. 633, 286 S.W.2d 617. Attorneys for Mid-South Engineering Company contend that the discretion to allow interest is vested only in the triers of fact who in this case were the members of the jury. The jury did not award any interest. Plaintiff asked for interest in her declaration but the Trial Judge gave no charge to the jury as to their discretion to award interest and no special request for such charge was submitted.

 Except in cases arising under T.C.A. Section 47-14-107 Chancellors and juries are given an equitable power to allow interest in the form of damages, if they think it just. The general rule is to allow interest in all cases where the amount of the debt is certain and not disputed on reasonable grounds. Textile Workers Union v. Brookside Mills, Inc., 205 Tenn. 394, 326 S.W.2d 671.

██ We hold that the plaintiff waived her right to claim interest by failing to make request for a charge thereon to the jury; and, also we hold that under the circumstances of this case, an allowance of interest is improper because the amount of the claim was not admitted and defendant had reasonable grounds to deny liability of the entire claim. Hence, we hold that His Honor the Trial Judge erroneously allowed interest from the date of death of Mr. Buchanan. We pretermit the question

whether a Trial Judge may award interest in some cases after a jury has returned a verdict for the plaintiff without interest. Assignment of error No. III is sustained.

If the remittitur of $4,800 is accepted by plaintiff, a judgment of $14,400 will be entered in this court in favor of plaintiff against the defendant, Mid-South Engineering Company, together with interest at 6% from September 15, 1966, the date the motion for new trial was overruled. Hammonds v. Mansfield, 41 Tenn.App. 515, 296 S.W.2d 652.

If the remittitur is refused, the cause will be reversed for a new trial. The defendant is taxed with the costs in the court below and in this court.

Avery and Bejach, JJ., concur.